# United States Court of Appeals
## For the First Circuit

Nos. 23-1956
     24-1562

UNITED STATES,

Appellee,

v.

OSAKPAMWAN HENRY OMORUYI, a/k/a Clifford Bernard, a/k/a Bernard

Clifford,

Defendant, Appellant.

Nos. 23-1957
     24-1561

UNITED STATES,

Appellee,

v.

OSARETIN GODSPOWER OMORUYI, a/k/a Nelson Bright, a/k/a Bright

Nelson,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Gelpí, Thompson, and Montecalvom,
<u>Circuit Judges</u>.

—————————————

<u>Jin-Ho King</u>, with whom <u>Milligan Rona Duran & King LLC</u> was on brief, for appellant Osakpamwan Henry Omoruyi.

<u>Jane Elizabeth Lee</u> was on brief, for appellant Osaretin Godspower Omoruyi.

<u>Mark T. Quinlivan</u>, Assistant United States Attorney, with whom <u>Leah B. Foley</u>, United States Attorney, was on brief, for appellee.

—————————————

July 15, 2026

—————————————

**MONTECALVO, Circuit Judge**. This case involves an appeal following a district court jury trial convicting co-defendants Osakpamwan Henry Omoruyi ("Henry") and Osaretin Godspower Omoruyi ("Osaretin")[1] of: (1) bank fraud, in violation of 18 U.S.C. § 1344; (2) conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; and (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). They raise five issues on appeal contending that: the government's evidence was insufficient to prove their guilt on bank fraud and conspiracy to commit bank fraud; the district court erred in instructing the jury on materiality for the charge of bank fraud; the district court incorrectly instructed the jury in response to its questions about conspiracy; the district court erred at sentencing when it applied an authentication enhancement; and finally that the district court erred when it ordered them to pay restitution and made them jointly and severally liable. For the reasons explained below, we affirm Henry and Osaretin's convictions and sentences, and we affirm the district court's restitution orders.

---

[1] For clarity, we adopt the names used by the parties, Henry and Osaretin.

## I. Background

We summarize the relevant facts in the record, saving some additional details for our analysis.

Henry and Osaretin are brothers who used fake passports to open bank accounts between 2019 and 2020 while residing in Massachusetts. Henry used a fake passport with the name "Clifford Bernard," with a picture of himself, to open accounts at TD Bank and two other banks. Osaretin used a fake passport with the name "Nelson Bright," with a picture of himself, to open accounts at TD Bank and four other banks. Osaretin also opened two accounts at TD Bank, and at one other bank, in the name of a fake company, Zion Cleaning.[2]

Henry and Osaretin set up the bank accounts in order to deposit money from romance and unemployment scams, as well as other impersonation scams, they were conducting. The romance scams involved a third party pretending to be in love with a vulnerable target -- sometimes an elderly individual -- to trick them into sending large amounts of money. Meanwhile, the unemployment scams involved filing for pandemic unemployment assistance using stolen identities, and then depositing the money in Henry and Osaretin's accounts.

---

[2] Henry and Osaretin also opened bank accounts in their own names.

In conducting these schemes, Henry and Osaretin exchanged account information with each other and third parties overseas who were working with them, and the proceeds from the scams were deposited into Henry and Osaretin's accounts.[3]

The Federal Bureau of Investigation ("FBI") was contacted by people targeted by Henry and Osaretin's scams, and started investigating the brothers. Eventually, the FBI executed a search warrant of Henry's storage facility and found, among other items, fake passports, other fake identification -- with the name Clifford Benard but showing Henry's picture -- prepaid debit cards, and bank documents. The FBI also executed a search warrant of Osaretin's home and found fake passports, other fake identification -- with the name Nelson Bright but showing Osaretin's picture -- prepaid debit cards, and bank documents. A grand jury ultimately returned a superseding indictment charging Henry and Osaretin with bank fraud, bank fraud conspiracy, and money laundering conspiracy.

The brothers were indicted in 2021, and an eight-day trial was held in 2023. After the trial, the jury convicted Henry and Osaretin of all three counts: bank fraud, conspiracy to commit

---

[3] We will discuss this in more detail in the pages that follow, but Osaretin withdrew $3,600 in ATM debit card transactions from one of the Nelson Bright TD Bank accounts, and Henry withdrew $1,000 in ATM debit card transactions from one of the Clifford Bernard TD Bank accounts.

bank fraud, and conspiracy to commit money laundering.  Henry and
Osaretin moved for judgment of acquittal at the close of the
government's case and at the close of the evidence.

The district court sentenced Henry on all counts to
concurrent terms of seventy-eight months of imprisonment and two
years of supervised release, and sentenced Osaretin on all counts
to concurrent terms of seventy-two months of imprisonment and two
years of supervised release.  The court deferred its determination
of restitution, stating an amended judgment would be entered after
restitution was determined.  Henry and Osaretin filed timely
appeals, which were consolidated for our review.  Subsequently,
the district court held a restitution hearing in April 2024.  In
May 2024, the district court amended the defendants' judgments to
include restitution awards of $615,805.65.  Henry and Osaretin
filed timely appeals of that order, which were consolidated with
this appeal.

## II. Discussion

We turn to the issues presented on appeal.

### A. Sufficiency of the Evidence[4]

We begin our analysis with the brothers' contention that
the government's evidence was insufficient to prove their guilt on

_____

[4] We begin with the sufficiency of the evidence arguments
because if Henry and Osaretin prevail here, we need not address
their challenges to the bank fraud and conspiracy to commit bank
fraud jury instructions because the Double Jeopardy Clause will

- 6 -

bank fraud and conspiracy to commit bank fraud. Both Henry and

Osaretin argued insufficiency of the evidence before the district

court and thus preserved this issue for appeal.[5]

The bank fraud statute, 18 U.S.C. § 1344, states:

> Whoever knowingly executes, or attempts to
> execute, a scheme or artifice--
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds,
> credits, assets, securities, or other property
> owned by, or under the custody or control of,
> a financial institution, by means of false or
> fraudulent pretenses, representations, or
> promises; shall be fined not more than
> $1,000,000 or imprisoned not more than 30
> years, or both.

A person can be convicted of bank fraud under either

§ 1344(1) or § 1344(2). We need only find the evidence sufficient

under § 1344(1) or § 1344(2) to uphold the conviction, and here,

we focus our discussion on § 1344(1). Turning to conspiracy to

commit bank fraud under § 1349, the government has the burden of

establishing "that[] a conspiracy existed[,]" that the person

---

attach to these convictions, precluding the government from retrying them on these charges. See United States v. Pérez-Greaux, 83 F.4th 1, 12 (1st Cir. 2023); see also United States v. Maldonado-Peña, 4 F.4th 1, 50 (1st Cir. 2021). Henry and Osaretin do not challenge their money laundering conspiracy convictions on sufficiency grounds, so we say no more.

[5] We review challenges to the sufficiency of the evidence de novo, examining the evidence "in the light most favorable to the prosecution and decid[ing] whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged count or crime." United States v. Díaz-Rosado, 857 F.3d 116, 120 (1st Cir. 2017) (quoting United States v. Cruz-Díaz, 550 F.3d 169, 172 n.3 (1st Cir. 2008)).

"knew of and voluntarily participated in the conspiracy[,]" and that the person took an "overt act in furtherance of the conspiracy."[6] Blasini-Lluberas, 169 F.3d at 67.

Before us, the brothers argue that there was insufficient evidence to convict them under § 1344(1) because the government failed to prove that the brothers' withdrawals from the bank accounts deprived the banks of something of value given Henry and Osaretin were the bank's "customer[s] in fact." In making this argument the brothers rely on Supreme Court precedent in Shaw v. United States. 580 U.S. 63, 72 (2016). In Shaw, the Court held that to constitute bank fraud under § 1344(1), the scheme must deprive the bank of "something of value," explaining that "a plan to deprive a bank of money in a customer's deposit account" satisfies this requirement. Id. Shaw determined that when a customer deposits money in a bank, the bank has "the right to possess the deposited funds against all the world but for [the customer]." Id. at 66. Relying on this sentence in Shaw, the brothers contend that the government failed to prove that the scheme deprived the banks of something of value because Henry and Osaretin were the "customer[s] in fact," and therefore their interests in the deposited funds were superior to the banks'

---

[6] In addition, the agreement can be express or tacit, and the agreement and the individual's participation do not need to be proven by direct evidence. United States v. Blasini-Lluberas, 169 F.3d 57, 67 (1st Cir. 1999).

- 8 -

interest in those funds.[7]  For example, despite opening accounts in the name Clifford Bernard, Henry argues that he was in fact opening this account for himself.  For the same reasons, the brothers argue that a rational jury could not find them guilty of conspiracy to commit bank fraud.

The government, on the other hand, contends that there was sufficient evidence for a rational jury to convict Henry and Osaretin of bank fraud under § 1344(1), as well as conspiracy to commit bank fraud under § 1349.  Considering § 1344(1) and the brothers' reliance on Shaw, the government contends that Henry and Osaretin were not the banks' "customers."  Instead, the government posits that the fake persons described in the fake passports were the "customers," and any argument that Henry and Osaretin's interest in the funds is superior to the bank's interest in the funds is meritless.

The government supports its contentions under § 1344(1) by relying on evidence in the record that: (1) Henry had a passport, displaying his picture, under the name Clifford Bernard that he used to open TD Bank account x4990; and (2) Osaretin had a passport, displaying his picture, under the name Nelson Bright that he used to open up TD Bank accounts x3363 and x4502.  The

---

[7] Osaretin raises the related argument that when a scheme does not pose a potential risk of loss to a bank then it does not deprive a bank of its property.  Because these arguments are similar, we analyze them together.

- 9 -

government also relied on testimony from a senior investigator from TD Bank that Henry and Osaretin used the passports to open the TD Bank accounts. The government thus contends that the evidence supports that Henry and Osaretin withdrew money that was deposited into those accounts by misrepresenting themselves as Clifford Bernard and Nelson Bright, respectively. In addition, it asserts, there was evidence sufficient for a jury to conclude that, in at least one instance, Henry used an ATM debit card listing Clifford Bernard's name to withdraw $1,000 from the Clifford Bernard TD Bank account x4990. Similarly, the government contends that there is evidence sufficient for a jury to conclude that in one instance Osaretin used an ATM debit card listing Nelson Bright's name to withdraw $3,600 from the Nelson Bright TD Bank account x4502. Finally, the government argues that there was sufficient evidence to convict Henry and Osaretin of bank fraud conspiracy.

Here, examining the evidence in the light most favorable to the government, as we are required to do, we think a rational factfinder could conclude beyond a reasonable doubt that Henry and Osaretin committed bank fraud under § 1344(1) and conspiracy to commit bank fraud under § 1349. First, the case law does not support Henry and Osaretin's legal arguments. Their reliance on Shaw is misplaced because Henry and Osaretin were not the "customers," described by the Court in Shaw. 580 U.S. at 66.

Despite the brothers' characterization, Shaw does not focus on how the bank's interest in a customer's deposited funds compares to the customer's interest in those same funds. Instead, Shaw simply held that the bank had an interest in the deposited funds, and the plan to deprive the bank of money in the customer's account was therefore a plan to deprive it of "something of value." Id. at 72. Moreover, in Shaw, the defendant deposited funds into another person's account -- a real customer's account. Therefore, the Court's statement that the bank has "the right to possess the desposited funds against all the world but for [the customer]," which the brothers rely on, has no bearing on a bank's interest in deposited funds in relation to a fake customer's interest which is the issue here. See id. at 66. Because -- unlike in Shaw -- Henry and Osaretin used fake names to open the accounts, their reliance on Shaw does not aid them.

Turning to the evidence before the jury, there was sufficient evidence to convict Henry and Osaretin of bank fraud under § 1344(1) because the evidence established that the brothers (1) engaged in a scheme or artifice to defraud (2) a federally insured financial institution, and (3) did so knowingly. Henry and Osaretin's use of fake identities and passports to open TD Bank accounts, which are FDIC insured,[8] and then their withdrawal

---

[8] It is undisputed that TD Bank is federally insured.

- 11 -

of money deposited in those accounts by using debit cards listing their fake names, means a rational jury could have found them guilty of bank fraud under § 1344(1).

Having found that there was sufficient evidence from which a jury could conclude that Henry and Osaretin engaged in bank fraud, we now turn to whether there was sufficient evidence to convict them of conspiracy to commit bank fraud under § 1349. We find that there was sufficient evidence. To explain, Henry and Osaretin exchanged their account information with each other before sending it to other people. This is circumstantial evidence from which the jury could infer that Henry and Osaretin had an agreement and that they "knew of and voluntarily participated in the conspiracy." Blasini-Lluberas, 169 F.3d at 67. In addition, the record supports that money from Nelson Bright's accounts (accounts which were opened by Osaretin using a fraudulent passport in Bright's name) was transferred to Henry's personal account during the conspiracy. Evidence of Henry and Osaretin withdrawing funds from the accounts also permits the jury to infer that Henry and Osaretin took an "overt act" "in furtherance of the conspiracy."

For these reasons, there was sufficient evidence for a jury to convict Henry and Osaretin of bank fraud and conspiracy to commit bank fraud.

## B. Jury Instruction Challenge

Henry and Osaretin challenge the court's materiality instruction for the bank fraud charges. Neither Henry nor Osaretin objected to the materiality instruction given by the district court and so we review their challenge for plain error.[9]

With respect to the bank fraud charges, the court instructed the jury that "false or fraudulent pretenses" means "any false statement or assertions that concern a material aspect of the matter in question." Then, it instructed the jury that "[a] 'material' fact or matter is one that has a natural tendency to influence or be capable of influencing the decision of the decision-maker to whom it was addressed."

Henry and Osaretin argue to us that the district court's materiality instruction was plainly erroneous because it was overbroad. The brothers contend that the district court should have instructed the jury that "a misrepresentation is material only if the truth would have resulted in a different outcome." To

---

[9] Unpreserved challenges to jury instructions are reviewed for plain error, meaning that they must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Vega, 813 F.3d 386, 396 (1st Cir. 2016) (quoting United States v. González-Vélez, 466 F.3d 27, 34-35 (1st Cir. 2006)). "[T]he plain error hurdle, high in all events, nowhere looms larger than in the context of alleged instructional errors." United States v. Paniagua-Ramos, 251 F.3d 242, 246 (1st Cir. 2001).

reach this conclusion, Henry and Osaretin argue that the higher standard for materiality from Maslenjak v. United States applies to the bank fraud statute. 582 U.S. 335, 347 (2017). The government counters that the materiality instruction was not plainly erroneous because it was consistent with this court's precedent in United States v. Moran, 393 F.3d 1 (1st Cir. 2004), and, moreover, the standard in Maslenjak is inapplicable.

We find that Henry and Osaretin failed to carry their burden in proving that the district court plainly erred when it gave the materiality instruction. As given, the court's instruction was consistent with Moran, and correctly stated the controlling law on materiality. Like the district court's jury instruction, Moran states "[m]ateriality requires only that a false or omitted statement have a natural tendency to influence, or is capable of influencing the decision of the decisionmaking body to which it was addressed." 393 F.3d at 13 (citation modified). Moreover, the brothers' argument depends on the premise that Maslenjak applies here, but this circuit has not adopted Maslenjak's materiality standard -- which applied to convictions premised on false statements made to immigration officials under 18 U.S.C. § 1425(a) -- in bank fraud prosecutions. See 582 U.S. at 341. Because the brothers do not point to "binding on-point precedent" to support their position, the brothers cannot satisfy

the plain error standard, and our inquiry ends there.  See United States v. Langston, 110 F.4th 408, 419 (1st Cir. 2024).

### C. The Jury's Questions about Conspiracy

Henry and Osaretin also argue that the district court incorrectly instructed the jury in response to its questions about the conspiracy charges.  The parties dispute whether this challenge was raised to the district court and therefore which standard of review applies; as we will explain, we need not decide that question because the brothers' arguments fail under either standard.

For context, the superseding indictment charged Henry and Osaretin with conspiracy to commit bank fraud and money laundering.  It stated that Henry and Osaretin "conspired with each other and with others known and unknown to the Grand Jury to commit" bank fraud and money laundering.

The district court instructed the jury at the close of evidence that the government had to prove that: "the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to commit bank fraud"; "the defendant willfully joined in that agreement"; and "one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy."  The district court instructed the jury that these

- 15 -

elements of conspiracy applied to both the conspiracy to commit bank fraud and the conspiracy to commit money laundering counts.

With that background, we turn to the questions the jury asked during deliberations about the conspiracy charges. The jury sent this note to the court:

> [P]er the indictment, did the Government need to prove beyond a reasonable doubt that Henry conspired w[ith] Osaretin and that Osaretin conspired with Henry? OR is evidence that they both had individual agreements w[ith] other co-conspirators sufficient? In other words, does the "at least two people" to commit money laundering have to include the defendants conspiring with each other[?]

After receiving the note, the court discussed the jury's questions with counsel outside the presence of the jury. After the court informed counsel how it intended to answer the jury's questions, the brothers' counsel objected.

The district court then brought the jury back and said:

> So in response to your question, you must find that the government proved the conspiracy as charged in Counts 3 and 4 beyond a reasonable doubt, and you have that indictment. You can find Henry Omoruyi guilty even if you find Osaretin not guilty, and vice versa. Of course, you can find them or you must find them both not guilty if you find the case against them hasn't been proven beyond a reasonable doubt. Therefore, you do not need to find that they conspired with each other so long as the government has proven beyond a reasonable doubt that the defendant conspired with at least one other person as charged in the indictment, which you have.

- 16 -

Before us, Henry and Osaretin argue that the court's response to the jury's questions permitted the jury to convict them of "separate conspiracies," despite being charged with a single bank fraud conspiracy and a single money laundering conspiracy in the indictment. In the alternative, Henry and Osaretin argue that the instruction was an abuse of discretion because it confused or misled the jury. The government, on the other hand, contends that the district court did not err because the instruction foreclosed the possibility that the jury could convict Henry and Osaretin of different conspiracies than those charged in the indictment.

The parties dispute whether Henry and Osaretin preserved this issue -- and therefore what standard of review applies -- but we need not decide this question because the brothers lose under either standard of review. Accordingly, we will review the brothers' argument under the standard for preserved instructional errors, which is more favorable to them. See United States v. Jadlowe, 628 F.3d 1, 14 (1st Cir. 2010) (citation modified). When reviewing a preserved instructional error, "we consider de novo whether an instruction embodied an error of law, but we review for abuse of discretion whether the instructions adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues." Id. Moreover, we are obligated to "examine the jury [instructions] as a whole in order to determine

whether the district judge clearly conveyed the relevant legal principle." United States v. Gonzalez, 570 F.3d 16, 21 (1st Cir. 2009). When examining the instructions, "we must also be mindful that the district court has considerable discretion in how it formulates, structures, and words its jury instructions." Id. (citation modified).

We think the district court's answer to the jury's conspiracy questions was neither a misstatement of law nor an abuse of discretion. When looking at the conspiracy instructions as a whole, it did not misstate the law. Instead, the initial jury instruction accurately conveyed what the law is, explaining, for instance, that to find Henry and Osaretin guilty of conspiracy, the government had to prove that: "the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to commit bank fraud"; "the defendant[s] willfully joined in that agreement"; and "one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy." Then, the court's answer to the jury's questions reminded the jurors of the conspiracy crimes "as charged in the indictment" not once but twice.[10] Furthermore, as Henry and Osaretin concede in

_____

[10] The district court's answer instructed the jury that, "[they] must find that the government proved the conspiracy as charged . . . beyond a reasonable doubt, and [they] have that indictment." It also instructed the jury that "[they] do not need

- 18 -

their briefs, the district court's answer correctly conveyed that the jury could have acquitted Henry but convicted Osaretin, or vice versa, and in that instance, the jury would have found that Henry and Osaretin had not conspired with each other. As for the brothers' argument that the instruction confused or mislead the jury, we presume that the jury follows instructions, and here, the instructions were sufficiently clear especially when the instructions spelled out the elements required to prove conspiracy and reminded the jury of the crime as charged in the indictment.[11] See United States v. Correia, 55 F.4th 12, 43 (1st Cir. 2022)(holding that the defendant did not overcome the presumption that juries follow instructions).

### D. Sentencing Enhancement Under USSG § 2B1.1(b)(11)

Next, Henry and Osaretin contend that the district court procedurally erred when it applied an authentication enhancement

---

to find that [Henry and Osaretin] conspired with each other so long as the government has proven beyond a reasonable doubt that the defendant conspired with at least one other person as charged in the indictment, which [they] have."

[11] Henry and Osaretin also state, without support or citation, that the district court's answer to the jury's questions could be a constructive amendment or a prejudicial variance but that they only need to argue that it was an error of law. Because the brothers did not develop this argument, it is waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

at sentencing, an issue which the brothers preserved for our review.[12]

The district court applied a two-level authentication enhancement under USSG § 2B1.1(b)(11)(A)(ii) for Henry and Osaretin's use of fake passports. This section of the sentencing guidelines requires a two-level increase to the offense level "[i]f the offense involved (A) the possession or use of any . . . (ii) authentication feature." USSG § 2B1.1(b)(11)(A).

The brothers argue that the district court committed procedural error at sentencing by applying a two-level enhancement to their offense levels under USSG § 2B1.1(b)(11)(A). They contend that the presentencing reports' offense conduct sections do not support that they possessed or used authentication features. The government, on the other hand, counters that the sentencing enhancement was supported because the fake passports used by the brothers contained authentication features.

The district court's application of an enhancement under USSG § 2B1.1(b)(11)(A)(ii) was not error. Under the comments to subsection (A)(ii), an "authentication feature" is a means of

_____

[12] This court reviews preserved claims of sentencing error for abuse of discretion. United States v. Leach, 89 F.4th 189, 195 (1st Cir. 2023). Under this standard, we "afford de novo review to the sentencing court's interpretation and application of the sentencing guidelines, assay the court's factfinding for clear error, and evaluate its judgment calls for abuse of discretion." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015).

identification that is used to determine whether a document is counterfeit or falsified, and that is what the unique identifying numbers are on passports. See USSG § 2B1.1 cmt. n.10(A) (adopting the definition of "authentication feature" from 18 U.S.C. § 1028(d)(1)). Turning to the at-issue passports in this case, they both display unique identifying numbers.

The record also establishes that Henry and Osaretin possessed or used the fake passports in order to secure the bank accounts they then used to steal funds connected to the charged offenses. For instance, the offense conduct section of Henry's presentence report states that one of the names on Henry's fake passports was "Clifford Bernard," that he opened four bank accounts in the name "Clifford Bernard," and that fraudulent proceeds were deposited in those accounts. The offense conduct section of Osaretin's presentencing report similarly states that one of the names on Osaretin's fake passports was "Nelson Bright," that he opened six accounts in the name "Nelson Bright," and that fraudulent proceeds were deposited in those accounts. For all of these reasons, the district court did not err when it ordered a two-level increase to the offense level under USSG § 2B1.1(b)(11)(A)(ii) for the use or possession of fake passports.[13]

---

[13] Because the district court's application of an enhancement under USSG § 2B1.1(b)(11)(A) was not error, this court need not

## E. Jurisdiction to Enter the Restitution Orders

Henry and Osaretin contend that the district court lacked jurisdiction to enter restitution orders in their cases.[14]

To analyze this issue we need to take a look at the relevant factual and procedural history. Prior to sentencing, the Probation Office filed presentencing reports proposing a restitution award of $1,987,761.74 to 144 of the 149 victims pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A and USSG § 5E1.1(a)(1). In its initial judgment and sentence, the district court deferred its decision on restitution until the end of January 2024, which was within ninety days of imposition of sentence. Henry and Osaretin timely appealed the initial judgment and sentence. Then, after additional briefing, the district court held a restitution hearing in April 2024. After the restitution hearing, the district court ordered restitution for only eleven victims, totaling $615,805.65. The district court also ordered that Henry and Osaretin were jointly

---

address the brothers' arguments that in the alternative an enhancement under USSG § 2B1.1(b)(11)(B) or USSG § 2B1.1(b)(11)(C) would have been error.

[14] Neither Henry nor Osaretin objected below to the district court's jurisdiction to enter the restitution order. However, this court has an independent obligation to examine whether the district court had jurisdiction. United States v. Naphaeng, 906 F.3d 173, 177 (1st Cir. 2018). We consider whether the district court had jurisdiction de novo. L. Offs. of David Efron v. Matthews & Fullmer L. Firm, 782 F.3d 46, 50-51 (1st Cir. 2015).

- 22 -

and severally liable for the restitution. Henry and Osaretin then timely appealed the restitution order.

Henry and Osaretin argue that the appeal of the first judgment and sentence, which was filed before the restitution hearing and order, divested the district court of jurisdiction to enter the restitution order which issued after the restitution hearing. To reach this conclusion, the brothers rely on this court's decisions in United States v. Naphaeng, 906 F.3d 173, 177-78 (1st Cir. 2018) and United States v. George, 841 F. 3d 55, 71-72 (1st Cir. 2016).

The government disagrees, arguing instead that the district court had jurisdiction to enter the restitution order. The government contends that because the district court indicated before the sentencing hearing that it would impose restitution but would defer the amount until a later date, the MVRA and Dolan v. United States bar Henry and Osaretin's arguments. 560 U.S. 605, 608 (2010). The government also argues that Naphaeng and George do not undermine its position.

We find that the district court had jurisdiction to enter the restitution order. The MVRA permits a district court to postpone determining the victims' damages for up to ninety days after sentencing when the losses are not ascertainable ten days prior to sentencing. 18 U.S.C. § 3664(d)(5). The district court did just that, indicating in its initial judgment that it was

deferring restitution until a later date.[15]  As the Supreme Court explained in Manrique v. United States, "deferred restitution cases involve two appealable judgments, not one."  581 U.S. 116, 122-23 (2017).  Moreover, our decisions in Naphaeng and George do not support Henry and Osaretin's arguments.  In Naphaeng, this court held that pursuant to the MVRA, the district court retained jurisdiction to order amended restitution while the appeal of the first judgment and sentencing was pending.  906 F.3d at 176-79.  That same holding applies here, and, despite Henry and Osaretin's contentions, Naphaeng did not hold that the district court only retained jurisdiction when there was a prior appeal of a provisional award of restitution.[16]  Finally, Henry and Osaretin's reliance on George is misguided.  George is a forfeiture case, and, unlike here, the district court's first judgment did not actively defer ordering forfeiture, but instead only alluded to the possibility of ordering forfeiture in the future.  United States v. Carpenter, 941 F.3d 1, 6 (1st Cir. 2019).  For these

---

[15] Dolan holds that a district court retains jurisdiction for more than ninety days if the district court makes clear prior to the deadline's expiration that it will order restitution.  See 560 U.S. at 608.  The brothers do not raise an argument that the district court failed to make this clear, and so we need not address this point further.

[16] Moreover, while it is true that this court in Naphaeng had stayed the appellant's prior appeal before the district court entered the amended restitution, the stay only "reinforced" this court's decision in Naphaeng, and the absence of the stay order does not dictate the outcome here.  See Naphaeng, 906 F.3d at 178.

reasons, Henry and Osaretin's appeal of the district court's first judgment did not strip the district court of jurisdiction to enter restitution.

## F. Restitution

Finally, Henry and Osaretin challenge the district court's restitution calculation and its order making them jointly and severally liable. Henry and Osaretin's counsel objected to the district court's reliance on victim impact statements and FBI Form 302s ("FBI 302s") to reach its decision. They also objected to Henry and Osaretin being held jointly and severally liable for the restitution.[17]

We begin here by first discussing the brothers' restitution hearing. As we described earlier, the district court ordered restitution for only 11 of the victims during the restitution hearing rather than all 144 victims for whom restitution was listed in the PSRs. Before the restitution hearing, the government submitted to the district court victim impact statements and FBI 302s, which are prepared by an FBI agent after a victim interview, which detailed the experiences of, and losses suffered by, some of the victims. At the start of the

---

[17] We review preserved challenges to restitution orders for abuse of discretion. See United States v. Chiaradio, 684 F.3d 265, 283 (1st Cir. 2012). This court "examin[es] the [district] court's subsidiary factual findings for clear error and its answers to abstract legal questions de novo." Id.

- 25 -

restitution hearing, the district court stated that it would only order restitution for those "who we know w[ere] harmed personally" and at the end of the hearing, the district court determined that restitution was warranted for eleven victims. The eleven victims to whom the court ordered restitution either testified at trial or submitted victim impact statements and were interviewed by the FBI as reflected in FBI 302s.

## 1. Calculation of Restitution

Henry and Osaretin assert that the government did not adequately set out that the victims' actual losses were caused by Henry and Osaretin, contending that the district court should not have considered the victim impact statements or FBI 302s, and that the government needed to submit evidence about the origins of the victims' funds. In connection with these arguments, Henry and Osaretin posit that some of the victims might have been participating in the crime, and they would have been incentivized to give false statements.[18] The government disagrees, arguing that the district court did not err in ordering restitution because the orders were supported by the victim's trial testimony or the victim impact statements and FBI 302s.

---

[18] Henry and Osaretin also rely on victim L.C. as an example of a victim who was involved in the crime and incentivized to give false statements, but, as the government properly contends, the district court did not order restitution for L.C., and therefore we need not discuss this argument further.

Our review of the sentencing court's restitution award is deferential. United States v. Simon, 12 F.4th 1, 64-65 (1st Cir. 2021). We will uphold it as long as the sentencing court's order "reasonably responds to some reliable evidence." Id. (citation modified). It is not an exacting standard as a "restitution award requires only a modicum of reliable evidence." Id. (citation modified). That being said, we "must resolve any genuine and material disputes about the fact, cause, or amount of the loss by a preponderance of the evidence." Id. at 65 (citation modified).

The district court ordered restitution under the MVRA, which awards restitution to victims for their actual losses. United States v. Carrasquillo-Vilches, 33 F.4th 36, 45 (1st Cir. 2022). Under the MVRA, a victim is defined as a "person directly and proximately harmed" as a result of the offense, and restitution is ordered only for losses that have an "adequate causal link" to the offense conduct. 18 U.S.C. § 3663A(a)(2); United States v. Alphas, 785 F.3d 775, 786 (1st Cir. 2015), superseded on other grounds by Carrasquillo-Vilches, 33 F.4th 36. When the government makes a prima facie showing of victims' actual losses, defendants must point to evidence supporting a specific amount by which to decrease the restitution -- speculation is not enough. See United States v. Padilla-Galarza, 990 F.3d 60, 93 (1st Cir. 2021).

The district court's restitution order was not made in error because the normal rules of evidence do not apply to the restitution hearing -- so the district court properly considered victim impact statements and FBI 302 statements -- and the brothers do not cast doubt on the reliability of the restitution ordered.  See United States v. Salas-Fernández, 620 F.3d 45, 47 n.2 (1st Cir. 2010); United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2015).  The brothers only argue generally that the victims could have been lying, but that contention alone is not sufficient to doubt the reliability of the victim impact statements and FBI 302s.  The government made a prima facie showing of actual loss for the eleven victims because for six individuals, it submitted trial testimony -- which was given under oath -- and other record evidence, and for five individuals, it submitted the FBI 302s and victim impact statements, along with findings from the Probation Office and bank records.  Although FBI 302 statements are not given to the FBI under penalty of perjury, knowingly lying to a federal agent is a federal felony punishable by up to five years in prison under 18 U.S.C. § 1001.  Moreover, the brothers failed to point to any evidence supporting that a different restitution assessment should have been made -- either by showing evidence of where reductions should have been taken or by establishing that any portion of the restitution calculation was erroneous -- leaving the evidence supporting the restitution award

unrebutted.  See Padilla-Galarza, 990 F.3d at 93.  For these reasons, the district court did not err when it ordered restitution to eleven victims.

## 2. Joint and Several Liability

Henry and Osaretin also argue that the district court erred by ordering them jointly and severally liable for the restitution because the district court's answer to the jury's question about conspiracy invalidated the verdict.  Regardless, they argue, the jury believed they were in separate conspiracies so they should not be jointly and severally liable.  The government disagrees.  The government contends that § 3664(h) of the MVRA instructs that Henry and Osaretin can be found jointly and severally liable.  It maintains that the court's instructions did not permit the jury to convict Henry and Osaretin of different conspiracies.[19]

This court finds that the district court did not err. Under the MVRA, "[i]f the court finds that more than [one] defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic

_____

[19] In connection with this argument, the government also points to the evidence of Henry and Osaretin exchanging information for accounts with each other before forwarding them to others.

circumstances of each defendant." 18 U.S.C. § 3664(h). "A sentencing court is not required to consider an individual's role in the offense when awarding restitution." Salas-Fernández, 620 F.3d at 48-49. Here, the district court did not err when it ordered the defendants jointly and severally liable because it found that they each contributed to the loss and participated in the crimes charged. The brothers are thus liable for the full amount of the restitution and the court had no responsibility to apportion (or not apportion) loss. Id. at 49. The order of joint and several liability was thus not in error.

### III. Conclusion

For these reasons, we **affirm** the district court's orders.